# Richmond

BRISTOL REDEVELOPMENT AND HOUSING AUTHORITY, ET AL. v. J. B.
DENTON, ET AL.

June 18, 1956.

Record No. 4485.

Present, All the Justices.

The opinion states the case.

*William H. Woodward (Stant & Roberts*, on brief), for the appellants.

*H. E. Widener* and *H. E. Widener, Jr. (Ralph H. Brumet, Dick B. Rouse* and *Widener & Widener*, on brief), for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In August 1953, J. B. Denton and others filed their bill in the court below against Bristol Redevelopment and Housing Authority, hereinafter referred to as the Authority, and the City of Bristol, alleging that the plaintiffs are owners of real estate in that area within the city known as "Sullins Street Redevelopment Project;" that purporting to act under the Virginia Housing Authorities Law (Code, §§ 36-1 to 36-55, both inclusive), the city council by ordinance had approved a slum clearance and redevelopment plan proposed by the Authority for the area and had entered into a written agreement with the Authority in furtherance of the project; that the redevelopment project contemplates the acquisition by the Authority, by purchase or by eminent domain, of all of the real estate in the area including that owned by the plaintiffs, the removal of the buildings therefrom,

and the devotion of portions of the area for street purposes, off-street parking facilities, and commercial and residential purposes; that the plaintiffs are not willing to part with the titles to their properties in furtherance of the project and consequently the Authority is threatening to acquire these properties by eminent domain; that the statute under which the proposed redevelopment is to be carried out is unconstitutional and void; that even if the statute be constitutional yet the proposed redevelopment project does not constitute a "valid undertaking within the meaning" of the statute; that a judicial determination of the facts will demonstrate that "the conditions in said area, as a whole, are not detrimental to the safety, health, morals or welfare of the community;" and that unless enjoined the defendants will in furtherance of the plan or project "proceed to invoke the power of eminent domain in an effort to condemn the lands" of the plaintiffs and others in the area.

The prayer of the bill was, "That all the acts of said defendants or either of them in furtherance of" the project "be declared null and void," and that the defendants be enjoined from proceeding with the project and from acquiring title to plaintiffs' lands "by purchase, condemnation, or otherwise."

The defendants demurred to the bill on the grounds, among others, that (1) The Housing Authorities Law is constitutional, and (2) The approval of the plan by the city council is "a legislative act which the court has no power to disturb under allegations of the bill."

The lower court sustained the first ground of the demurrer upon the authority of *Hunter* v. *Norfolk Dedevelopment & Housing Authority*, 195 Va. 326, 78 S. E. 2d 893, which was decided while the court had the demurrer under consideration. It overruled the second ground of the demurrer.

The Authority and the city filed a joint answer in which they alleged that "the predominant and primary purpose of the redevelopment project is to eliminate a blighted and deteriorated area, a part of which is a slum area;" "that the area within the said project is a blighted area; that a substantial portion of said area is a slum area; that the conditions existing therein are detrimental to the safety, health, morals and welfare of the community, and that it is necessary to acquire all of the area within said project in order to eliminate said conditions;" and that the Authority, the planning commission and the city council having "in good faith determined" that these con-

ditions exist, "this court has no right, power or jurisdiction to make any original or independent examination of those questions."

After the issues had been thus framed there was an *ore tenus* hearing at which numerous witnesses were heard. In a written opinion the lower court held that (1) Whether the city council had exceeded its authority in determining that the area was a slum, blighted, or deteriorated area and available for redevelopment under the terms of the statute was subject to judicial review; (2) "The overwhelming weight of evidence" showed that the area was not in fact a slum, blighted, or deteriorated area; and (3) The evidence showed that the "primary purpose" of the proposed redevelopment was for "commercial" uses and not the clearance of slum, blighted, or deteriorated areas. Consequently, it entered a decree enjoining the Authority and the city from further prosecution of the project. To review that decree the present appeal was allowed.

The precise questions presented in the present appeal were not involved in the *Hunter* case. There we held that the statute which empowered the housing authority to acquire by eminent domain and rehabilitate properties in a slum, blighted or deteriorated area as defined in Code, § 36-49, is constitutional; that the local authority had been legally constituted; and that the project had been properly approved by the city council. In that case there was no dispute as to whether the area was a slum or a blighted or deteriorated area as defined in section 36-49(1). There, we said, "The plan contemplated the eradication of what is characterized as two of the worst 'slum and blighted areas' in the city, * * * ." (195 Va., at page 333, 78 S. E. 2d, at page 898.)

In the present case the underlying question is whether the area proposed to be redeveloped is in fact a slum, blighted, or deteriorated area within the meaning of Code, § 36-49(1), and therefore subject to acquisition and redevelopment by the local Authority under the terms of the statute. No point has been made that the project was not initiated by the local Authority or approved by the city council in the manner required by the statute. These required steps were outlined in the *Hunter* case and need not be repeated here.

Code, § 36-48, is a finding and declaration "(a) that there exist in many communities within this Commonwealth blighted areas (as herein defined) which impair economic values and tax revenues, cause an increase in and spread of disease and crime, and constitute a menace to the health, safety, morals and welfare of the residents of

the Commonwealth; (b) that the clearance, replanning, rehabilitation and reconstruction of such blighted areas and the sale or lease of land within such areas for redevelopment in accordance with locally approved redevelopment plans are necessary for the public welfare and are public uses and public purposes for which public money may be spent and private property acquired by purchase or the power of eminent domain, and are governmental functions of grave concern to the Commonwealth; (c) that there are also certain areas where the condition of title, diverse ownership of the land to be assembled, the street or lot layouts, or other conditions prevent a proper development of the land and that it is in the public interest that such areas, as well as blighted areas, be acquired by eminent domain and made available for sound and wholesome development in accordance with a redevelopment plan, and that the exercise of the power of eminent domain and the financing of acquisition and preparation of the land by a public agency for such redevelopment is likewise a public use and purpose."

In the *Hunter* case we held that this legislative declaration that the taking of property for the stated redevelopment purposes constitutes a public use, while presumptively correct, is subject to judicial review. 195 Va., at page 335, 78 S. E. 2d, at page 899.

Code, § 36-49, with which we are primarily concerned in the present case, defines undertakings constituting redevelopment projects which "any authority now or hereafter established" is specifically empowered to carry out. Among these are:

"(1) To acquire blighted or deteriorated areas, which are hereby defined as areas (including slum[1] areas) with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement of design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals or welfare of the community;

"(2) To acquire other real property for the purpose of removing, preventing, or reducing blight, blighting factors or the cause of blight;

"(3) To acquire real property where the condition of the title, the diverse ownership of the real property to be assembled, the street

---

[1] Code, § 36-3 (h) defines a "slum" as "any area where dwellings predominate which, by reason of dilapidation, overcrowding, lack of ventilation, light or sanitary facilities, or any combination of these factors, are detrimental to safety, health or morals."

or lot layouts, or other conditions prevent a proper development of the property and where the acquisition of the area by the authority is necessary to carry out a redevelopment plan; * * * ."

[■] The appellants' first contention is that in approving the project, in accordance with Code, § 36-51, the council made a finding of fact that the area is a slum, blighted, or deteriorated area; that such finding is legislative in character and conclusive upon the court in the absence of allegation and proof that it is arbitrary, capricious, or was induced by fraud or bad faith.

With respect to this contention it should be noted that under the statute the primary responsibility of investigating the conditions in an area proposed for redevelopment, and determining whether it is a slum, blighted or deteriorated area, is delegated to the local redevelopment authority and not to the city council. Code, §§ 36-19, 36-50. The functions of the council are to approve or disapprove the "redevelopment plan" as outlined by the authority (Code, § 36-51), and if approved, to cooperate with the authority in its execution. Code, § 36-52. Assuming that the approval of the project by the council constitutes a legislative finding that the area is a blighted or deteriorated area, as the appellants argue, both the action of the council and the findings of the authority are, within well-recognized limitations, subject to judicial review.

It is of course well settled, as the appellants argue, that "Since the determination of questions of fact on which the constitutionality of statutes may depend is primarily for the legislature, the general rule is that the courts will acquiesce in the legislative decision unless it is clearly erroneous, arbitrary, or wholly unwarranted." 11 Am. Jur., Constitutional Law, § 144, p. 823. Or, as another authority states it, "The determination of the * * * facts on which the validity of a statute depends is primarily for the legislature", subject to review usually only where "manifestly arbitrary or unreasonable." 16 C. J. S., Constitutional Law, § 151(3), p. 763. See also, 4 Mich. Jur., Constitutional Law, § 55, pp. 145, 146. If the question "is fairly debatable and the legislative determination is not manifestly arbitrary or unreasonable," it must be sustained. 16 C. J. S., Constitutional Law, § 151(3), pp. 763, 764. See also, *Reynolds* v. *Milk Commission*, 163 Va. 957, 967, 179 S. E. 507, 510; *Mumpower* v. *Housing Authority*, 176 Va. 426, 443, 11 S. E. 2d 732, 738.

On the other hand, legislative conclusions based on findings of fact

are not immune from judicial review where they are arbitrary and unwarranted. 16 C. J. S., Constitutional Law, § 151(3), p. 764.

These principles apply with respect to the legislative acts of municipal corporations. McQuillin on Municipal Corporations, 3d Ed., Vol. 2, § 10.33, p. 653 *ff*; *Id.*, § 10.37, p. 663 *ff*; *National Linen Service Corp.* v. *City of Norfolk*, 196 Va. 277, 279, 83 S. E. 2d 401, 403, and cases there cited.

In *Chapman* v. *Huntington, W. Va., Housing Authority*, 121 W. Va. 319, 3 S. E. 2d 502, 503, the syllabus prepared by the court states that "The factual finding of a city council to the effect that slum areas exist within the city is entitled to great respect and is not subject to attack unless clearly wrong." See also, 13 Mich. Jur., Municipal Corporations, § 65, p. 438, and cases there cited.

■ All presumptions are in favor of the validity of the exercise of municipal power. *National Linen Service Corp.* v. *City of Norfolk, supra*, 196 Va., at page 279, 83 S. E. 2d, at page 403, and cases there cited; 62 C. J. S., Municipal Corporations, § 208-a, p. 389 *ff*; 37 Am. Jur., Municipal Corporations, § 177, p. 810 *ff*. The burden is upon one alleging the invalidity of an ordinance to establish such invalidity by clear and convincing proof. 62 C. J. S., Municipal Corporations, § 208-c, p. 395; 37 Am. Jur., Municipal Corporations, § 179, pp. 814, 815.

■ But whether a particular ordinance enacted pursuant to a general grant of power is arbitrary and unreasonable and therefore void is a question for the court. *National Linen Service Corp.* v. *City of Norfolk, supra*, 196 Va., at page 281, 83 S. E. 2d, at page 404.

The same principles apply to the findings of fact by a redevelopment authority to which, as we have seen, the General Assembly has delegated the primary responsibility of determining the conditions in an area and initiating the project. Annotation, 44 A. L. R. 2d 1437, 1438.

In the lower court the right of the Authority to acquire property within the area was based mainly upon paragraph (1) of section 36-49, that is, that such property lies within an area which is "blighted or deteriorated" as there defined. That is the main contention before us.

Appellants also contend that the Authority had the right to acquire the property in the area by virtue of the provisions of paragraphs (2) and (3) of section 36-49.

Section 36-49(1) defines "blighted or deteriorated areas" as "areas

(including slum areas) with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement of design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals or welfare of the community."

It will be observed that in order for an area to qualify as "blighted or deteriorated," not only must the buildings and improvements therein be in the specified physical condition, but "by reason of" such condition the area must be "detrimental to the safety, health, morals or welfare of the community."

Thus, the condition of an area is the very basis of the jurisdiction and power of a redevelopment authority to acquire property located therein by eminent domain. Code, § 36-50. Unless the area meets this definition the authority has no power to acquire it and the council has no basis for the approval of such taking. In this situation, the court has the right to determine whether the area is in fact "blighted or deteriorated" as defined in the statute. Code, § 36-49(1).

It should be remembered that statutes conferring the power of eminent domain are strictly construed and every reasonable doubt is to be resolved adversely to the right. The power can only be exercised for the purpose, to the extent, and in the manner provided by law. 6 Mich. Jur., Eminent Domain, § 7, pp. 693, 694.

In *Chapman v. Huntington, W. Va., Housing Authority, supra*, in the syllabus prepared by the court it is said: "In a bill of complaint for an injunction to restrain slum clearance and low-cost housing projects, the allegations denying the existence of slum areas, in the face of an ordinance of the city finding contrariwise, must be clear, unequivocal and based on sound reasons." (3 S. E. 2d, at page 503). See also, *In re Housing Authority of City of Salisbury*, 235 N. C. 463, 70 S. E. 2d 500, 502; 62 C. J. S., Municipal Corporations, § 207, p. 388.

Whether the allegations in the bill in the present case measure up to the required clarity and definiteness we need not inquire, for if the bill be defective in that respect it has become unimportant inasmuch as the evidence has been fully developed on both sides and the case is before us on the sufficiency of the proof as to the character of the area property.

█ We come then to the question, Does the evidence warrant the finding of the lower court that the area as a whole is not in fact a

slum, blighted, or deteriorated area, as defined in section 36-49-(1)? For the reasons hereinafter stated, we conclude that it does.

The record shows that a large number of witnesses testified on the subject. In its written opinion the lower court commented on the fact that it had heard the testimony of one or more persons with respect to "practically every parcel in the area." Moreover, the opinion shows that the lower court had carefully inspected the area and was acquainted with its nature. In passing on the sufficiency of the evidence we view it in the light most favorable to the lower court's finding which has settled all conflicts.

The project area lies between Cumberland street on the north, Piedmont avenue on the east, State street on the south, Commonwealth avenue on the west, and borders on a business district of the city. The area covers approximately 16 acres, of which its present uses are 63.9% residential, 17% commercial, 1.9% industrial, 5.2% vacant, and 12% devoted to street purposes. There are 67 dwelling houses within the area occupied by 72 families, with a total population of 286 persons. Approximately 42% of the dwellings are occupied by the owners and the remaining 58% by tenants.

The area is in one of the oldest residential districts of the city. The majority of the residences are of frame construction. The dates of their construction are not shown in the record, but the photographs introduced as exhibits show that some must have been built many years ago, while others are of more recent construction. Of the 67 dwellings in the area, 37 have been recently improved; all have sewerage, running water and flush toilets, and all but one have electricity. Included in the area are 14 commercial structures, one industrial structure, and a synagogue.

The appellees concede that a few of the residences are dilapidated and should be demolished, but this is not true of the structures in the area as a whole. As the trial court observed, and as was pointed out in the *Hunter* case (195 Va., at page 339, 78 S. E. 2d, at page 901), the condition of the area as a whole and not that of isolated structures is the controlling factor in determining whether the area is qualified for redevelopment under the statute.

While some of the houses need repairs and paintings, the evidence clearly shows that the buildings in the area as a whole are not in the physical condition specified in section 36-49(1); that they are not so dilapidated, obsolescent, overcrowded, lacking in ventilation, light

and sanitary facilities as to be detrimental to the safety, health, morals or welfare of the community.

· A number of the owners of property in the area, some of whom reside there, testified that the area as a whole has not deteriorated as a residential section, but that as such it has improved in recent years.

The main evidence for the appellants which tends to support their contention that the area is blighted or deteriorated is a brochure prepared by planning consultants employed by the local Authority. This in turn was based upon a survey of the physical condition of the structures in the area. As to the existing conditions in the area the brochure recites that "The average age of the structures is about 50 years;" that 63.9% of the area is occupied by dwellings; that 61% of the dwellings are dilapidated, 56% have no private bath, 43% lack private toilets, 35% have only cold water, and 69% have no central heat.

The accuracy of this survey was vigorously attacked by the appellees who offered evidence which tended to show that the surveyor, Mrs. Weiss, had not in fact visited several of the residences which she claimed she had inspected. Consequently, the weight of the testimony of this witness was for the trial court. But even if these findings be taken as true, they do not necessarily show that the area as a whole meets the qualifications of section 36-49(1).

Since 63.9% of the area is occupied by dwellings, the dilapidation of 61% of these is only 39% of the whole. There is no contention that the commercial structures are dilapidated. The mere lack of private baths, private toilets, hot water, or central heat, does not bring the area within the terms of the statute. Neither does the proximity of the area to a business district.

We agree with the trial court that the evidence fully warrants the finding that "The majority of the residences are sound, safe and well kept," and that "to characterize this as a slum or blighted area is to go contra to the overwhelming weight of the evidence in the case."

■ This brings us to the consideration of appellants' final contention that the Authority had the right to acquire the property in the area under paragraphs (2) and (3) of section 36-49.

Paragraph (2) of section 36-49 empowers an authority "To acquire other real property for the purpose of removing, preventing, or reducing blight, blighting factors or the cause of blight."

Under this paragraph an authority may for the stated purpose incidentally include in the project property which is not itself neces-

sarily blighted or deteriorated. But this does not alter the require-ment that when such incidental part is included the area as a whole must be blighted or deteriorated. That condition does not obtain here.

Paragraph (3) of section 36-49 gives an authority the right to "acquire real property where the condition of the title, the diverse ownership of the real property to be assembled, the street or lot layouts, or other conditions prevent a proper development of the property and where the acquisition of the area by the authority is necessary to carry out a redevelopment plan."

We need not stop to consider whether paragraph (3) is intended to empower the acquisition of property in an area merely as incidental to the primary purpose of eliminating blighted or deteriorated conditions in the area, or independently of that purpose. If the latter be the intent of the paragraph, then a serious question arises as to whether despite the declaration in section 36-48(c), the taking of property to eliminate the conditions there specified constitutes a taking for "a public use and purpose."

Even if the statute be construed as a valid grant of such power, which we do not decide, there is no showing that the area here is qualified for redevelopment under the provisions of section 36-49 (3) standing alone. There is no contention that "the condition of the title, the diverse ownership of the real property to be assembled" "prevent a proper development of the property."

In their answer appellants allege that "by reason of the steep grades" in the area there should be included in the project certain properties which are not slum, blighted or deteriorated, but are necessary "to carry out the *secondary or incidental purposes* of properly grading and laying out the area." (Italics supplied.) Thus, the appellants recognize that the primary purpose of the project is to eliminate slum, blighted or deteriorated properties, and that the acquisition and regrading of these additional properties are merely incidental to such primary purpose.

It thus appears that the basic contention of appellants is that the area as a whole qualifies for redevelopment because it is a "blighted or deteriorated" area as defined in section 36-49(1). Since the evidence clearly shows that the area as a whole does not meet that statutory definition, it necessarily follows that the action of the local Authority in finding that because of this condition the property should be acquired for redevelopment purposes, and the action of the council

in approving the project, were devoid of legal authority, arbitrary and unwarranted. Consequently, the appellees were entitled to the relief prayed for in their bill.

We find it unnecessary to pass upon the other matters discussed in the trial court's opinion and the briefs.

The decree appealed from is

*Affirmed.*