## Richmond

## SKAGGS RUDDER AND WILMA L. RUDDER

### v.

## WISE COUNTY REDEVELOPMENT AND HOUSING AUTHORITY

November 22, 1978.

Record No. 770582.

Present: All the Justices.

*S. Strother Smith, III (William H. Robinson; Robert T. Copeland; Jeffrey Fluck; Smith, Robinson & Vinyard,* on brief), for plaintiffs in error.

*J. Robert Stump (Sturgill and Stump, P.C.,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

In this condemnation proceeding the Wise County Redevelopment and Housing Authority sought to acquire certain real property of Skaggs Rudder and his wife located within the project

area of the St. Paul Neighborhood Redevelopment Project.[1]

Under the Project, approved by the Town of St. Paul and by the County of Wise, the Authority proposed to acquire all land within the project area of 96.7 acres, including a portion of the Clinch River. All structures on the land would be demolished, the Clinch River would be rechanneled by the Tennessee Valley Authority (TVA) to prevent flooding, a four-lane highway, Alternate Route 58-A, would be constructed by the Virginia Department of Highways, and the remainder of the land would be resold for redevelopment for residential and commercial purposes.

The Rudders' answer to the petition for condemnation was treated as a motion to dismiss. In it the landowners challenged the Authority's right to condemn their property, asserting, *inter alia,* that the project area was not blighted, that a proper environmental impact study was required but had not been prepared, and that the proposed taking was unconstitutional because the land was later to be resold to private individuals. Evidence on the motion to dismiss was presented in *ore tenus* hearings and by deposition, but the trial court did not rule on the motion until the hearing before the condemnation commissioners had been completed and the report by the commissioners awarding the Rudders the sum of $65,090 had been filed. Exceptions to the commissioners' report were overruled. Subsequently, the trial court, in a written opinion, specifically found that the taking of the Rudders' property was for public use, that the property was located in a blighted area, and that an adequate environmental impact study of the area had been made. By final order, the court overruled the motion to dismiss

---

[1] Code § 36-49 (Repl. Vol. 1976) provides in part as follows:

"Any authority now or hereafter established, in addition to other powers granted by this or any law, is specifically empowered to carry out any work or undertaking (hereafter called a 'redevelopment project'):

"(1) To acquire blighted or deteriorated areas, which are hereby defined as areas (including slum areas) with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement of design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals or welfare of the community;

"(2) To acquire other real property for the purpose of removing, preventing, or reducing blight, blighting factors or the cause of blight;

". . . ."

and confirmed the commissioners' report. On appeal, the question is whether the court erred in overruling the motion to dismiss.

The finding made by the Authority that the project area was blighted or deteriorated was presumptively correct but subject to review by the trial court; nevertheless, the burden was upon the landowners to show by clear and convincing evidence that the finding was arbitrary and unwarranted. *Runnels* v. *Housing Authority*, 207 Va. 407, 411, 149 S.E.2d 882, 885 (1966). *See Adair* v. *Nashville Housing Authority*, 388 F. Supp. 481, 489-490 (D. Tenn. 1974), *aff'd*, 514 F.2d 38 (6th Cir.), *cert. denied*, 423 U. S. 928 (1975). Moreover, in passing on the sufficiency of the evidence to support the trial court's decision we view it in the light most favorable to the trial court's finding that the area was blighted.

The Rudders called as witnesses various persons who had participated in the survey, examination, and evaluation of the project area during the planning stages of the redevelopment project. These were engineers and consultants who had made reports, based upon detailed inspection of the area and of the exteriors and interiors of the structures therein, that the project area was blighted or deteriorated within the meaning of Code § 36-49 and was eligible for redevelopment. It appears to be uncontradicted that the project area, excluding the Clinch River, aggregated approximately 80 acres. It further appears from a letter signed by Kenneth Poore, an engineer employed by one of the consulting firms that prepared studies and plans for the project, that the project area contained 109 principal buildings, of which 62, located on 15.1 acres, were classified as structurally substandard requiring or warranting clearance, and 42 others, located on 42 acres, warranted clearance to remove blighting factors (40 subject to periodic flooding, 1 obsolete building type, and 1 improperly located on the land). The remaining land, with slopes exceeding 50%, was inaccessible during periods of flooding.

The only witness who testified that the project area was not blighted or deteriorated was a real estate broker, Andrew J. Hargroves. His familiarity with the area was limited. He conceded that he had been inside not more than twelve to fifteen of the

buildings in the area, that some buildings already had been demolished when he made his inspection, and that he had spent only five minutes, prior to testifying, viewing photographs of the 109 buildings in the project area.

The Rudders rely heavily upon *Housing Authority* v. *Denton*, 198 Va. 171, 93 S.E.2d 288 (1956), where we affirmed the ruling of the trial court that the housing authority had improperly classified a proposed redevelopment area as blighted. We held that the evidence clearly showed that the buildings in the area as a whole were not dilapidated. *Denton, supra*, 198 Va. at 179, 93 S.E.2d at 294.

The housing authority in *Denton* had introduced evidence to show that 63.9% of the total redevelopment area was occupied by dwellings, and that 61% of these dwellings were dilapidated. We stated, however, that this evidence, even if credible, did not *necessarily* establish the validity of the authority's actions as it would show that only 39% of the area as a whole was blighted. We agreed that the evidence fully supported the finding of the trial court that the majority of the residences were· not blighted but were "'sound, safe, and well kept,'" and that the decision of the authority was "'. . . contra to the overwhelming weight of the evidence in the case.'" *Id.* at 180, 93 S.E.2d at 295. *See* Annot., 45 A.L.R.3d 1096, 1124-1125 (1972).

Contrary to the contentions of the Rudders, however, we did not establish a rigid mathematical formula to be used in evaluating the determination made by a housing authority that an area was eligible for redevelopment. Thus, in *Runnels, supra*, we based our decision not upon an inflexible standard, but upon the sufficiency of the evidence to support the trial court's finding that the housing authority's determination of blight was not arbitrary or unwarranted. *See* Annot., 45 A.L.R.3d 1096, 1127 (1972); Spies, *Property, 1967 Survey of Virginia Law*, 53 Va. L. Rev. 1642-1645 (1967).

In the present case, there was evidence that a majority of all the buildings, residential and non-residential, within the project area were dilapidated. In addition, there was evidence that most of the remaining buildings, the streets, and a large section of the undeveloped areas were adversely affected by periodic flooding and other blighting factors. This evidence supports the determina-

tion by the Authority and the finding of the trial court that the project area was blighted or deteriorated within the meaning of Code § 36-49. We cannot say, therefore, that the landowners carried their burden of proving by clear and convincing evidence that the Authority's finding of blight was arbitrary and unwarranted, or that the trial court's similar finding was contrary to the evidence or without evidence to support it. Accordingly, we hold that there was no reversible error in the court's ruling on this issue.

The Rudders next argue that the Authority sought to condemn their property ultimately for private use and benefit in violation of the Virginia (Article I section 11) and Federal (Amendments V and XIV) Constitutions. We do not agree.

Unquestionably, most of the land in the project area after clearance of buildings, rechannelization of the river, and construction of Alternate Route 58-A and access streets and roads, will be resold to private interests. Charles McConnell, Assistant Director of the Authority, conceded that probably 75% or more of the area would ultimately be controlled by private owners. Tyler Cornett, Executive Director of the Authority, testified that, in addition to the public purpose served by the rechannelization of the river and construction of the new highway, there would remain in the project area "open spaces for sort of a rustic outdoor development, picnic tables and that type of thing". But the primary public purpose contemplated by the Authority was the elimination of a blighted or deteriorated area. The disposition of the land, although designed to prevent a recurrence of the blighted conditions, is incidental and subordinate to this primary purpose. *Hunter* v. *Redevelopment Authority*, 195 Va. 326, 335-337, 78 S.E.2d 893, 899-900 (1953). *See Mumpower* v. *Housing Authority*, 176 Va. 426, 11 S.E.2d 732 (1940). In this respect, the present case differs significantly from *Phillips* v. *Foster*, 215 Va. 543, 211 S.E.2d 93 (1975), upon which the Rudders rely. In that case, we held that the statute (Code § 21-428) authorizing condemnation by a private individual of a drainage easement was uncontitutionally applied when the condemnor sought to acquire the easement for the purpose of developing property for private gain. Moreover, we were not there concerned with the power of eminent domain vested in housing authorities. *See Inlet Authority* v. *Bastian*, 206 Va. 906, 911, 147

S.E.2d 131, 135 (1966). Thus, the Rudders' reliance upon *Phillips* is misplaced.

■ There is no merit in the Rudders' contention that the Authority violated Article XI section 1 of the Virginia Constitution[2] by failing to prepare a full and adequate environmental impact statement. No such statement is required by that constitutional provision, by any Virginia statute, or by the case cited by the Rudders, *Rappahannock League* v. *VEPCO*, 216 Va. 774, 222 S.E.2d 802 (1976). Moreover, a lengthy environmental impact statement was filed by the Department of Housing and Urban Development. While the Rudders introduced evidence in an effort to show that various environmental factors had not been adequately studied and evaluated, the trial court found that an adequate study had been made, and there was evidence to support this finding.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*

---

[2] Article XI Section 1 provides:

"To the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth."