## CIRCUIT COURT OF WISE COUNTY

City of Norton

    v.

R. O. Goad
and Wanda Goad

August 21, 1992

Case No. L92–399

By Judge James C. Roberson

The court has reviewed the pleadings, evidence heard ore tenus, memoranda and authorities and makes the following decisions.

### Proceedings

The City of Norton, a Virginia municipal corporation, filed a petition in condemnation on July 23, 1992, against R. O. Goad and Wanda Goad, seeking to condemn a temporary construction easement to permit access over the Goads' property to install caissons, grade beams, storm drainage lines, and steel columns on property owned by the Industrial Development Authority of the City of Norton (N.I.D.A.). The city asked that the Goads be enjoined from interfering with the free use of the temporary construction easement.

On July 22, 1992, the city filed a certificate of take and deposited the estimated just compensation with the clerk of this court.

On July 29, 1992, the Goads filed their answer denying all allegations in the petition except their admission that the landowners have denied access to the City of Norton . . ." over the Goads' property. The Goads requested that the City be enjoined from acquiring a temporary construction easement.

The Goads filed affirmative defenses alleging:

1. The City of Norton can only condemn property if it is to be used for a public use; the temporary construction easement asked for in the petition in condemnation is for a private use.

2. The City of Norton cannot proceed under § 33.1–119 of the Code of Virginia because that section is limited to highway condemnations.

3. The Industrial Development Authority of Norton does not have the right of eminent domain and eminent domain proceedings instituted by the city in its effect permit the condemnation proceedings instituted by the city to condemn property for the use and benefit of Industrial Development Authority wherein no such power was granted to the Industrial Development Authority.

On August 12, 1992, the court entered an order setting a hearing on August 18, 1992, to determine all issues other than just compensation.

A hearing was held on August 18, 1992, and the court heard evidence from the city and the Goads and heard argument of counsel.

*Facts*

The City of Norton created the Industrial Development Authority of the City of Norton (N.I.D.A.) pursuant to § 15.1–1376 of the Industrial Development and Revenue Bond Act (Chapter 33 of Title 15.1, Code of Virginia). N.I.D.A. is a political subdivision of the Commonwealth of Virginia governed by a board of directors appointed by the City of Norton.

N.I.D.A. owns property on Park Avenue in the City of Norton. It leased the property to AT&T to house the Virginia Relay Center (a telephone communication system designed to aid the hearing impaired). The center employs 135 people. N.I.D.A. desires to enlarge the building in phases ultimately to employ 350 people. The anticipated construction will be entirely on N.I.D.A. property but because N.I.D.A.'s building is approximately five to six feet from the Goad property, the new construction will require that men, equipment, and material cross over a portion of the Goad property (60 feet wide strip in most places and 120 feet in front). The construction includes installation of caissons, grade beams, storm drains, and steel columns on N.I.D.A.'s property. N.I.D.A. does not have the power of eminent domain.

On July 21, 1992, the city adopted a resolution authorizing the filing of a certificate of take and condemnation proceedings to ac-

quire a temporary construction easement for sixty days over the Goad property adjoining the N.I.D.A. property. The certificate of take was signed, acknowledged, and recorded in the clerk's office of the Circuit Court of Wise County, Virginia, on July 22, 1992. The city deposited the sum of $932.20 on the same day as estimated just compensation. On July 23, 1992, the city filed its petition in condemnation against the Goads.

On August 4, 1992, the city adopted a resolution pursuant to § 15.1–898 declaring that a public necessity exists for taking a temporary construction easement for sixty days over the Goad property adjoining the N.I.D.A.property. The resolution further approved, ratified, and confirmed the filing of the certificate of take and petition for condemnation to meet the public necessity existing since the denial of access by the Goads on June 9, 1992.

On June 9, 1992, R. O. Goad informed the city by letter that, "I do not now nor have never given the City of Norton or any of its agents or affiliates any permission to enter on or otherwise trespass on property which I own in Norton located on Main Street on which there is a building and car lot."

The city purchased the old Piggly Wiggly property and conveyed it to N.I.D.A. N.I.D.A. gets revenue from the city. The city does work on the parking lot of N.I.D.A. The city manager and mayor consider the efforts of N.I.D.A. in leasing the property to the Virginia Relay Center and the proposed expansion of the building as a public necessity to create jobs and employment in furtherance of the purpose of N.I.D.A. to promote industry and develop trade by inducing commercial enterprises to relocate and remain in the Commonwealth and the City of Norton (§ 15.1–1375, Code of Virginia). The Governor of Virginia visited Norton in an effort to encourage more jobs in Norton.

The mayor considers N.I.D.A. as an "arm of the city." The assistant city manager attends every meeting of the board of directors of N.I.D.A. and is a staff person for N.I.D.A. He is a liaison between N.I.D.A. and the city. He attempted to negotiate with the Goads for the easement. Money was not an issue. Mr. Goad conditioned his giving an easement on the city's giving him permission to place an office trailer on his property. If the city granted this, Goad would give the easement without cost.

The city claims urgency in having the temporary easement because all equipment and employees are in place and ready. There are

no side setback regulations, and Goad could effectively block future construction of drains and other construction by erecting a structure on his property so close to N.I.D.A. that it would place space prohibitive limitations on future expansion of N.I.D.A. building.

The architect of the construction project states that the construction would require a new deep foundation with caissons, grade beams, steel columns, concrete structures, and *storm drains*. The current five feet plus wide property of N.I.D.A. is not adequate to bring drills, trucks, and other equipment on the property. Construction now was urgent because of costs, the contractor is on the site, the funds are available, and access in the future may be difficult. All construction will be on N.I.D.A.'s property. No damage is anticipated to Goad's property. The construction contract requires that Goad's property be placed in the same condition as before construction if disturbed in any way.

R. O. Goad says he opposes the building renovation and use of his property because the city refused to allow him to place an office trailer on this property. He contends that a sixty-day easement will adversely affect his business. He admits that he and the city were unable to agree on his granting of a temporary easement to the city.

### Discussion and Authorities

The City of Norton unquestionably has the authority and powers of eminent domain as set forth in Chapter 2, Section 2.2, of the Chapter of the City of Norton which provides [as follows].

The powers of eminent domain set forth in Title 33.1, Chapter 1, Title 15.1 and Title 25, Chapter 1.1, of the Code of Virginia (1950), as amended, and all acts amendatory thereof and supplemental thereto, mutatis mutandis, are hereby conferred upon the City of Norton.

A. Certificates issued pursuant to §§ 33.1–1 through 33.1–132 of the Code of Virginia (1950), as amended, and acts amendatory thereof and supplemental thereto may be issued by the city council, signed by the mayor and countersigned by the city treasurer or director of finance. Such certificates shall have the same effect as certificates issued by the Transportation Commissioner, under the aforesaid laws, and may be issued in any case in which the city proposes to acquire property of any kind by the exercise of its powers of eminent domain for any lawful public purpose, whether within or without the city.

B. In addition to the powers conferred by the aforesaid laws, such certificates may be amended or cancelled by the court having jurisdiction of the proceedings, upon petition of the city, at any time after the filing thereof, provided that the court shall have jurisdiction to make such order for the payment of costs and damages, if any, or the refund of any excessive sums theretofore paid pursuant to such certificate as shall, upon due notice and hearing, appear just. The court shall have jurisdiction to require refunding bonds, for good cause shown by the city or any other person or party in interest, prior to authorizing any distribution of funds pursuant to any certificate issued or deposit made by the city.

The city may acquire an easement whenever a public necessity exists under the general law provisions of § 15.1–898 of the Code of Virginia. The quick take provisions of § 33.1–119 through § 33.1–125 are specifically granted to the city by its charter without any limitations contained in § 15.1–898. Upon the filing and recordation of the certificate and payment of estimated just compensation, a defeasible title is vested in the city until just compensation is determined in the condemnation proceedings. The City Charter is Chapter 2, § 2.2A, provides:

> Such certificates shall have the same effect as certificates issued by the Transportation Commissioner, under the aforesaid laws, and may be issued in any case in which the city proposes to acquire property of any kind by the exercise of its powers of eminent domain for any lawful public purpose, whether within or without the city.

These charter provisions exceed the authority and powers granted to the city in § 15.1–898 (which limits the provisions of § 33.1–119 to lands or easements necessary for streets, water, sewer or utility pipes or lines or related facilities). The provisions of § 15.1–1 clearly grant greater power by charter than by general law when it states:

> Except when otherwise expressly provided, the provisions of this title shall in no wise repeal, amend, impair, or affect any other power, right, or privilege conferred on cities and towns by charter or any other provision of general law.

Accordingly, the city has the power and authority to condemn and exercise the quick take provisions without the limitation of § 15.1–

898 which must yield to the charter provisions. Even if the general law prevailed over the city charter, the evidence discloses that the easement taken by the city involves construction of water storm drains which is permitted under the exceptions in § 15.1–898. A water storm drain is clearly for "water . . . or utility pipes or lines or related facilities."

The thrust of Goad's defense to the condemnation proceedings and the quick take in the hearing heard on August 18, 1992, is that the city is condemning the property involved for private use of N.I.D.A. and not for "any lawful public purpose" required by the city charter and not for the "public necessity" required by general law § 15.1–898 and § 25–46.7(2)(C).

Under § 15.1–1375 of the Industrial Development and Revenue Bond Act, the intent of the legislature of Virginia is set forth as:

> It is the intent of the legislature by the passage of this chapter to authorize the creation of industrial development authorities by the several municipalities in this Commonwealth so that such authorities may acquire, own, lease, and dispose of properties to the end that such authorities may be able to *promote industry* and develop trade *by inducing* manufacturing, industrial, governmental and *commercial enterprises* and institutions of higher education to *locate in or remain in this Commonwealth* . . . . [Emphasis added.]

N.I.D.A. was created by the city for the purposes contemplated by statute. It owns property conveyed to it by the city. It has leased this property to AT&T under its specific authority "to lease to others any or all its facilities . . ." § 15.1–1378(5).

In *Industrial Development Authority of the City of Richmond, Virginia v. LaFrance Cleaners and Laundry Corporation*, 216 Va. 277, 217 S.E.2d 879 (1975), the City of Richmond created an industrial development authority which financed the construction of laundry facilities to be leased and operated by Virginia Hospital Laundry, Inc., in competition with the private laundry (LaFrance Cleaners and Laundry Corporation). The Supreme Court of Virginia validated the financing and actions taken by the industrial development authority was "designed to promote a public purpose."

Similarly, in *Rudder v. Wise County Redevelopment & Housing Authority*, 219 Va. 592, 249 S.E.2d 177 (1978), the Wise County Redevelopment Authority sought to condemn land adjacent to

Clinch River. Structures were to be demolished, the river rechanneled, a four-lane highway constructed, and the remainder of the property was to be resold for residential and commercial purposes. The Rudders argued that the authority sought to condemn property ultimately for private use and benefit in violation of Virginia (Article I, Section II) and *Federal* (Amendments V and XIV) Constitutions. In that case, more than seventy-five percent of the area condemned would ultimately be controlled by private owners. The Supreme Court of Virginia upheld the trial court's determination that the taking of Rudder's land was for public use. The court stated at page 597:

> The *disposition of the land*, although designed to prevent a recurrence of the blighted conditions, is *incidental and subordinate to this primary purpose. Hunter v. Redevelopment Authority*, 195 Va. 326, 335–337, 78 S.E.2d 893, 899–900 (1953). [Emphasis added.]

The language of Code § 15.1–898 does not limit the city's exercise of its power of eminent domain to circumstances where the property acquired will be used solely as a city project. The sole limitation is that a public necessity exists which requires use of the property.

The limitation in the city charter is "the exercise of its power of eminent domain for any lawful public purpose . . ." (Chapter 2, § 2.2A).

The expansion project undertaken by N.I.D.A. is sufficiently public in character to justify taking of private property by the city in furtherance of the statute's legislative intent in creating industrial development authorities (such as N.I.D.A.) to "acquire, own, lease and dispose of properties to the end that such authorities may be able to promote industry and develop trade by inducing manufacturing, industrial . . . and commercial enterprises . . . to locate in and remain in this Commonwealth . . . ." (§ 15.1–1375, Code of Virginia).

N.I.D.A.'s activities have resulted in a communications enterprise to aid the hearing impaired which employs 135 people and will ultimately employ 350 people.

A restrictive interpretation of the powers which a municipality may exercise in the creating and assisting of its industrial developmental authority would severely thwart the objectives contemplated by the General Assembly of Virginia. The provisions of § 15.1–1375 require that Chapter 33 of Title 15.1 (Industrial Development and

Revenue Bond Act) "shall be liberally construed in conformity with these intentions" to promote industry and develop trade by inducing commercial enterprises to locate and remain in this Commonwealth. A proper interpretation of the Industrial Development and Revenue Bond Act would contemplate the power of a municipality to acquire a temporary construction easement through its powers of eminent domain to aid the authority which the city created to carry out the legislatively mandated purposes.

The legislature in enacting the act before us has determined that the promotion of industry and the development of trade by industrial authorities are in the public interest. 208 Va. 51, at page 55. The Supreme Court in *Chesapeake Development Authority v. Suthers*, 208 Va. 51 (1967), at page 59 stated:

> Public purpose may be as well served by inducing an industry whose continued existence is essential to the economy of a community to remain in this state as by inducing a new industry to enter. It is beside the point that some private interest may benefit incidentally from the action of an industrial authority in inducing an industry to remain in the state so long as such action promotes the "safety, health, welfare, convenience and prosperity" of the inhabitants of this Commonwealth. Code § 15.1–1375.

### The court finds that:

1. The City of Norton has the power and authority to acquire a temporary construction easement as requested in the petition in condemnation filed to permit access over the Goad property for the installation of caissons, grade beams, storm drainage lines, steel columns and related construction on property owned by the Industrial Development Authority of the City of Norton by the exercise of the city's power of eminent domain granted by the city charter and general law, including the right to acquire defeasible title under the quick take provisions. (Chapter 2, § 2.2, City of Norton Charter; § 33.1–119 to § 33.1–125; § 15.1–898, Title 25, Code of Virginia).

2. The exercise of the power of eminent domain by the City of Norton in this condemnation proceeding is for a lawful public purpose and for public necessity.

3. The temporary construction easement taken by the city is *for the lawful public purpose and public necessity* in furtherance of the

express legislative intent to authorize the city to create an industrial development authority to promote industry and develop trade by inducing commercial enterprises to locate and remain in the Commonwealth (§ 15.1–1375, Code of Virginia). The industrial development authority further promotes the safety, health, welfare and convenience of the inhabitants of the Commonwealth by providing communication facilities for the hearing impaired. § 15.1–1375.

4. The City of Norton has made a bona fide but ineffective effort to purchase the temporary construction easement from the landowners as required by law.

5. By the filing of the certificate of take and depositing the estimated just compensation, the City of Norton has acquired a defeasible title to the property and temporary construction easement set forth in the petition in condemnation.

6. The City does not have an adequate remedy at law, and equity requires that the Goads be restrained and enjoined from obstructing or interfering in any way with the free use by the City of Norton of the temporary construction easement described in the certificate of take and petition in condemnation and that the landowners cease and desist all activities which would interfere with, molest, harass or bother the agents, servants or employees of the City of Norton or the Industrial Development Authority of the City of Norton, in the free use of the temporary construction easement taken.

7. The court overrules the affirmative defenses filed by the Goads.