COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Humphreys and McClanahan
Argued by teleconference


NATIONAL COLLEGE OF BUSINESS AND
   TECHNOLOGY, INC.
                                                                          OPINION BY
v.        Record No. 0938-10-3                    JUDGE ROBERT P. FRANK
                                                                          FEBRUARY 15, 2011

C. RAY DAVENPORT, COMMISSIONER
   OF LABOR AND INDUSTRY


FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Robert F. Doherty, Jr., Judge

Samuel M. Brock, III (Monica Taylor Monday; James J. O'Keeffe;
Spencer M. Wiegard; Spilman Thomas & Battle, PLLC; Gentry
Locke Rakes & Moore, LLP on brief), for appellant.

Crystal Y. Twitty, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Wesley G. Russell, Jr., Deputy
Attorney General; Peter R. Messitt, Senior Assistant Attorney
General, on brief), for appellee.


        National College of Business and Technology, Inc. (the College) was cited for violating

certain asbestos-related safety standards issued by the Virginia Department of Labor and

Industry Occupational Safety and Health Administration (VOSH).  The circuit court[1] upheld the

citations and penalty.  On appeal, the College contends the circuit court erred in finding:  (1) that

the College's employees were exposed to the asbestos hazard and (2) that the violations were

"serious," as defined by Code § 40.1-49.3.  Essentially, the College argues the evidence to

---

        [1] Pursuant to Code § 40.1-49.4(E), when a citation for a safety or health violation is
contested, the Safety and Health Codes Commission shall file a civil action in the circuit court
for that court to affirm, modify or vacate the Commissioner's citation or proposed penalty, or to
direct other appropriate relief, upon making findings of fact and conclusions of law.

support these findings was not sufficient. For the following reasons stated, we affirm in part and reverse in part.

## BACKGROUND

On appeal, a party complaining of an agency action bears the burden of demonstrating an error of law subject to review. Roanoke Memorial Hospitals v. Kenley, 3 Va. App. 599, 603, 352 S.E.2d 525, 527 (1987).

We view the facts in this case "in the light most favorable to sustaining the [Commissioner's] action and 'take due account of the presumption of official regularity, the experience and specialized competence of the [Commissioner], and the purposes of the basic law under which the [Commissioner] has acted.'" Sentara Norfolk Gen. Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999) (quoting Bio-Medical Applications of Arlington, Inc. v. Kenley, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987)), rev'd on other grounds, 260 Va. 267, 534 S.E.2d 325 (2000).

VOSH received an anonymous complaint concerning dust from the renovation of the College in Salem.[2] Doug Wiggins, a VOSH asbestos/lead compliance officer, investigated the complaint at the College. He initiated the inspection on January 20, 2004. During the inspection, Wiggins was told there had been an asbestos inspection and report prior to the renovation work.

On one side of the gymnasium, Wiggins noticed four-inch diameter holes cut through the concrete floor. The holes were for electrical conduit to pass through the floor to the basement. He was told there was an old boiler room beneath that area.

Wiggins then inspected the boiler room located in the basement and observed some damage suspected to contain asbestos materials, approximately seven to eight feet above the floor. Wiggins photographed insulation material found in pipes and ducts in the boiler room. He found

---

[2] This complaint is unrelated to the issues before this Court.

asbestos-containing material in some of the insulation.[3]  Wiggins testified it takes an expert to identify asbestos.  Wiggins indicated most asbestos material is covered by a cloth-like material to "keep the asbestos materials in and to insulate," but several pipes had damaged insulation, revealing the asbestos material.  One photograph showed a pipe with new insulation.

Wiggins observed a valve or faucet-like handle in the boiler room, used to regulate the boiler's temperature.  In response to a question by the circuit court, Wiggins indicated that the presence of the heat valve would cause employees to go to the boiler room.  Wiggins also observed boxes containing College records being stored in the boiler room.

Upon the conclusion of the inspection, Wiggins recommended that the College be cited for certain violations related to the asbestos found in the boiler room.  VOSH, based on the recommendations, issued a citation with three subparts.

Item 1 charged the College with not determining the quantities of the asbestos pipe insulation and other asbestos material in the facility, in violation of 20 C.F.R. 1910.1001(j)(2)(i).[4]

Item 2a charged the College with failure to post signs at the entrance of the boiler room where damaged asbestos materials were located, in violation of 20 C.F.R. 1910.1001(j)(3)(v).

Item 2b charged the College with failure to place warning labels on the products (pipe insulation, old boiler, etc.) that contained asbestos, in violation of 20 C.F.R. 1910.1001(j)(4)(i).

---

[3] Wiggins took five samples of the insulation material, but took no air samples. Laboratory analysis revealed asbestos (amosite and chrysotile).  Amosite is described as brown asbestos.  Chysotile is described as white asbestos.  Sample ID: A415 tested for both amosite and chrysotile at approximately 10% each; Sample ID: A416 tested for chrysotile fibers at approximately 20%; Sample ID: A417 tested for 10% chrysotile fibers in a piece of insulation; Sample ID: A418 tested for chrysotile fibers at approximately 30%.

[4] The asbestos standards applied by VOSH are the same as the general industry asbestos standards applied by the federal Occupational Safety and Health Administration and are found in the Code of Federal Regulations, 29 C.F.R. § 1910.1001 et seq.

Wiggins explained the rationale of the Item 1 citation. The College was required to inspect all areas where renovation occurred for presumed asbestos-containing material (PACM) and asbestos-containing material (ACM). Specifically, the College would have been required to inspect the boiler room where the damaged asbestos material was found.[5] Wiggins concluded employees had access to the boiler room because the College records were stored there and because employees must go to the boiler room to adjust the temperature.

Referring to Item 2a of the citation, Wiggins testified the College had a duty to post signs at the entrance to the boiler room to identify the asbestos materials present. There were no such signs. As to item 2b, the College was obligated to affix warning labels to all products containing asbestos fibers (or to their containers). No such labels were present.

Wiggins then addressed the range of penalties associated with the violations. There are three grades of severity: high, medium, and low. There are two grades of probability: greater and lesser. The levels of severity and probability are combined to reach a "gravity-based" penalty.[6]

---

[5] A survey was conducted February 20, 2003 by Baratta & Associates, Inc. to determine the presence of ACMs in those areas of the College that would be affected by the proposed renovation. As part of its recommendations, the surveyor wrote in his report:

> While we were preparing our proposal, we noted some damaged TSI [thermal system insulation] on the steam header in the boiler room. Evaluating the boiler room was not within the scope of this assignment. Since the TSI is damaged, it could present a health hazard if the space is entered often. We recommend the owner consider having the boiler room TSI sampled and tested. If it does prove to be an ACM, the owner may wish to have it removed while the other abatement work related to this project is being performed.

The College objected to the admission of the report on hearsay grounds. The circuit court sustained the objection; however, the document was admitted into evidence for proof that it was received by The College and "to say what it says in here was said or presented," and not for the truth of the matter asserted. Thus, the only relevance of the report is that the College was aware of a potential hazard.

[6] The Field Operations Manual (FOM) explains gravity-based penalty (GBP) as follows: "The GBP for each violation shall be determined based on an appropriate and balanced

- 4 -

Because asbestos is carcinogenic, Wiggins classified the severity as "high." He classified the probability of exposure as "lesser" based on the potential for employees to be in the area and with what frequency.

Wiggins applied the same calculation to arrive at the penalties for Items 2a and 2b, which he grouped together to arrive at a proposed penalty. He calculated the penalties based on the criteria for "serious" violations set forth in the Field Operations Manual (FOM).

The circuit court affirmed the Commissioner's citations and the penalties imposed.

This appeal follows.

ANALYSIS

The College contends no credible evidence supported the circuit court's finding that the College's employees were exposed to the asbestos hazard within the six-month period prior to the citation date.[7] The College also asserts the circuit court erred in finding that the violations were "serious," because no evidence showed a substantial probability that death or serious physical harm could result from a condition existing in the place of employment, as required by Code § 40.1-49.3.[8]

---

professional judgment, combining the severity assessment and the final probability assessment." Chapter IV, C.2.g.(1). It must be noted that the FOM is an operational manual setting forth procedures to investigate violations. It is not and does not purport to establish substantive law.

[7] Code § 40.1-49.4(A)(3) states: "No citation may be issued under this section after the expiration of six months following the occurrence of any alleged violation." Further, FOM, Chapter III, B.1.b provides in part: "The exposure must have occurred within the six (6) months directly before the issuance of the citation in order to serve as a basis for the violations."

[8] Code § 40.1-49.3 defines "serious violation" as

> a violation deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

On appeal, findings of fact made by the trial judge are presumed to be correct and are "given the same effect as a jury verdict, settling all conflicts in the evidence in favor of the prevailing party." Richmond v. Beltway Properties, Inc., 217 Va. 376, 379, 228 S.E.2d 569, 572 (1976) (citing Reiber v. James M. Duncan & Associates, Inc., 206 Va. 657, 660, 145 S.E.2d 157, 160 (1965)). In reviewing such a factual finding, we view the evidence in a light most favorable to the circuit court's determination. See Rudder v. Wise County Redevelopment & Housing Authority, 219 Va. 592, 595, 249 S.E.2d 177, 178 (1978). "A contention that the evidence does not support the court's factual finding will be sustained only when the finding is plainly wrong or is without credible evidence to support it." Pike v. Dept. of Labor & Indus., 222 Va. 317, 322, 281 S.E.2d 804, 807 (1981).

Thus, our inquiry is whether there is credible evidence to support the circuit court's factual findings. It should be noted the College does not assert it complied with the regulations by posting the required signage or that it inspected the boiler room.

For each citation, the Commissioner must prove by a preponderance of the evidence: (1) the applicability of the standard, (2) the existence of noncomplying conditions, (3) employee exposure or access, and (4) that the employer knew *or with the exercise of reasonable diligence could have known* of the violative condition. See e.g., Secretary of Labor[9] v. Dun-Par Engineered Form Co., OSHRC Docket No. 82-928 (1986). The College contests only the sufficiency of the second element.

---

[9] The Commissioner of Labor and Industry is the counterpart of the U.S. Secretary of Labor. Magco of Maryland, Inc. v. Barr, 33 Va. App. 78, 86 n.3, 531 S.E.2d 614, 618 n.3 (2000).

<u>Exposure</u>

The College first contends no credible evidence supports the finding that the College's employees were exposed to the asbestos,[10] or that even if exposure took place, it was not within six months before the citation date. The College posits that Wiggins's testimony regarding employee exposure was merely an assumption, based on the presence of the storage boxes and a heat valve in the boiler room.[11] The College further argues no evidence revealed that any asbestos-containing material was located at or near the storage boxes or the heat valve, i.e. that no evidence proved an employee could be exposed to asbestos, even if the employee was in the boiler room. The College also submits that there was no evidence any employee actually entered the boiler room within the six-month limitation period.[12]

The Commissioner responds that an employee need not actually be "exposed" to the hazard as long as the employee has access to the hazard. We agree.

> [I]n order for the Secretary to establish employee exposure to a hazard she must show that it is reasonably predictable either by operational necessity or otherwise (including inadvertence), that employees have been, are, or will be in the zone of danger. We emphasize that . . . the inquiry is not simply into whether exposure is theoretically possible. Rather, the question is whether employee entry into the danger zone is reasonably predictable.

---

[10] 29 C.F.R. § 1910.1001(b) defines "employee exposure" as "that exposure to airborne asbestos that would occur if the employee were not using respiratory protective equipment." The College argues the C.F.R. requires actual exposure, which is inconsistent with "access." VOSH responds that the C.F.R. does not require "actual" exposure.

[11] The College did not object to this testimony.

[12] To the extent the College argues Wiggins did not comply with the investigative procedures set forth in the FOM to investigate potential violations and specifically whether employees were exposed to the hazards, we will not consider this argument. Rule 5A:20(c) requires appellant's opening brief to contain "[a] statement of the assignments of error with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." <u>See</u> <u>Cirrito v. Cirrito</u>, 44 Va. App. 287, 309, 605 S.E.2d 268, 278 (2004) (noting that arguments not presented in the questions presented (now assignments of error) will not be considered). Further, because this argument was not made at trial, it is waived under Rule 5A:18.

Secretary of Labor v. Pete Miller, Inc., OSHRC Docket No. 99-947 (2000) (quoting Secretary of Labor v. Fabricated Metal Prods., Inc., OSHRC Docket No. 93-1853 (1997)).

FOM Chapter III, B.1.b supports this view:

>    (5)    Potential Exposure.  A citation may be issued when the possibility exists that an employee could be exposed to a hazardous condition because of work patterns, past circumstances, or anticipated work requirements, and it is reasonable to expect that employee exposure could occur, such as:
>
>    (a)    The hazardous condition is an integral part of an employer's recurring operations, but the employer has not established a policy or program that would prevent employee exposure, including accidental exposure from reoccurring, or
>
>    (b)    The employer has not taken steps to prevent access to unsafe machinery or equipment which employees may have reason to use; or
>
>    (c)    A safety or health hazard poses a danger to employees simply by employee presence in the area and it is reasonable to expect that an employee could come into the area during the course of the work, to rest or to eat at the job site, or to enter or to exit from the assigned workplace.

Thus, to resolve whether credible evidence supports the circuit court's factual finding that employees were "exposed" to the asbestos, we must apply the test explained in Pete Miller to determine whether it is possible that an employee could be exposed to asbestos, i.e., whether it is reasonably predictable that employees have been or will be in the zone of danger.

Barr v. S.W. Rodgers Co., 34 Va. App. 50, 537 S.E.2d 620 (2000), is instructive.  As in the instant case, an issue in Barr was whether the evidence was sufficient to prove that an employee had been exposed to the condition which was the subject of the citation.  The compliance officer did not see any employees actually in the trench, the site of the violation.  However, there was evidence that an employee dug the trench, there was a footprint in the

bottom of the trench, and work had been done in the trench. Id. at 61, 537 S.E.2d at 625. We concluded the evidence was sufficient. Id.

In this case, although Wiggins saw no employee in the boiler room, evidence supports the circuit court's finding that employees were "exposed" to the hazard – specifically, that they had access to the boiler room. Wiggins saw boxes of College records stacked in the boiler room, in close proximity to insulated pipes. He also testified that a valve used to adjust the temperature "in case it gets too cold or too hot" was located in the boiler room, in close proximity to the defective pipes. Without objection, Wiggins testified employees had access to the asbestos because of "the storage of the records in the basement area and then with the adjustments of the heat of the building."

Based on Wiggins's testimony and the exhibits depicting the boiler room, the circuit court properly inferred it was reasonably predictable that employees would enter the boiler room, the zone of danger, to adjust the building's temperature and to store and retrieve school records. While the evidence was not as direct as it was in Barr, we cannot say the circuit court's ruling on exposure was plainly wrong.

The College further challenges the sufficiency of the evidence that exposure occurred within six months of the citation date. The evidence revealed that the inspection occurred January 20 through January 30, 2004. The citations were issued February 19, 2004. The violations were observed during the inspection dates. Six months prior to the issuance date would have been August 2003. It is therefore reasonable to conclude that an employee had access to the asbestos hazard within six months of the issuance date of the citation, because presumably an employee would have adjusted the temperature of the building between August

- 9 -

2003 (summer) and February 2004 (winter).[13] [14]  Furthermore, access is continuing.  On any given day, it is reasonably predictable that employees have been, are, or will be in the zone of danger.  See Pete Miller, OSHRC Docket No. 99-947.

The College contends the anonymous complaint referred only to dust in the gymnasium and not asbestos in the boiler room.  We find no relevance to this contention.  The issue before us is not what brought an inspector to the College, but rather what the inspection revealed.

Serious Violation

Next, the College contends no evidence supported the circuit court's finding that the violations were "serious."  This argument addresses the penalty imposed upon the College.  Code § 40.1-49.3 states:

> "Serious violation" means a violation deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

Under the FOM, Chapter III, B.2.b(2)(c), serious physical injury is defined as follows:

1.  Serious physical harm is defined as impairment of the body in which part of the body is made functionally useless or is substantially reduced in efficiency on or off the job.  Such impairment may be permanent or temporary, chronic or acute.  Injuries involving such impairment would usually require treatment by a medical doctor.

2.  Serious physical harm can also be an illness that could shorten life or significantly reduce physical or mental

---

[13] There is no evidence in the record that there were any other temperature controls or heating sources elsewhere in the building.

[14] Because of this ruling, we do not address the Commissioner's argument that the statutory language "may" is "directory" and not "mandatory," nor that a statute of limitations does not apply to the sovereign.

efficiency by inhibiting the normal function of a part of the body.

The College first contends that because no employee was actually exposed to asbestos, no employee would face the risk of death or serious physical harm. We have already resolved that argument against the College.

Alternatively, the College maintains that even if employees entered the boiler room, no evidence indicates the defective insulation material in the boiler room could cause a "substantial probability of death or serious physical harm." The College argues there was no air sampling testimony nor medical testimony as to that probability. Specifically, the College argues that there is no evidence as to how much exposure and what type of exposure could cause a substantial probability of death or serious injury. Essentially, the College challenges causation between exposure and injury. We agree with the College.

The Commissioner points to the definition of a serious violation, which requires a substantial probability that death or serious bodily harm could result. Relying on identical language under 291 U.S.C. § 666(k) ("if there is a substantial probability that death or serious injury could result"), the commissioner in Pete Miller opined: "That provision does not mean that the occurrence of an accident must be a substantially probable result of the violative condition but, rather, that a serious injury is the likely result should an accident occur." OSHRC Docket No. 99-947 (quoting Miniature Nut & Screw Corp., OSHRC Docket No. 93-2535 (1996)). In other words, it is necessary to prove that if an employee were to be exposed to the asbestos, the likely result of such exposure would be a serious injury or death.

The circuit court had evidence of the levels of amosite and chrysotile asbestos in the insulation material. The circuit court inquired, "[a]re each of these the same material that causes

- 11 -

mesothelioma?," and Wiggins responded, "[y]es sir, both of them will." All of the materials

analyzed contained greater than one percent, meaning that ACM was present.[15]

Furthermore, without objection,[16] Wiggins testified that asbestos is "a carcinogenic,"[17]

which "may cause cancer, may cause mesothelioma, may cause asbestosis."[18] Our inquiry, then,

is whether the record contains sufficient credible evidence that a person exposed to asbestos is

likely to suffer serious injury or death. We do not find such evidence.

The record contains no evidence as to what level of exposure or what frequency of

exposure would lead to injury or death. Is a single exposure to asbestos sufficient? Must the

exposure take place over a prolonged period of time? There is no evidence to answer these

questions. Wiggins's testimony establishes that asbestos is a carcinogen. Many substances,

however, are carcinogenic. Evidence that shows merely that a given substance is a carcinogen is

not dispositive and will not support a finding of a serious violation.

---

[15] ACM means any material containing more than 1% of asbestos. 29 CFR
§ 1910.1001(b).

[16] Earlier in the hearing, the circuit court sustained an objection to similar testimony by
Wiggins. The College did not make a continuing objection, nor did it renew its objection to
Wiggins's later testimony. A party cannot avail itself of an objection to evidence if the party
has, at some other time during the trial, "'voluntarily elicited the same evidence, or has permitted
it to be brought out by his adversary without objection.'" Burns v. Board of Supervisors of
Stafford County, 227 Va. 354, 363, 315 S.E.2d 856, 862 (1984) (quoting Whitten v. McClelland,
137 Va. 726, 741, 120 S.E. 146, 150 (1923)).

[17] A carcinogen is "a substance or agent producing or inciting cancerous growth."
Webster's New International Dictionary 337 (3d ed. 1993). Carcinogenic means "producing or
tending to produce cancer." Id.

[18] Mesothelioma is a form of cancer which affects mesothelial tissue in the lungs,
peritoneum or pericardium. The Sloane-Dorland Annotated Medical-Legal Dictionary 351
(Supp. 1992). Asbestosis is a form of lung disease that causes interstitial fibrosis or scarring of
the lungs. Id. at 36.

There must be some testimony that relates the frequency or level of exposure to a substantial risk of death or serious physical injury.  In this case, the record contains insufficient evidence to show a serious violation.

CONCLUSION

The Commissioner and the circuit court correctly found proof by a preponderance of the evidence that employees were exposed to asbestos at the College.  Finding no credible evidence to support a finding of a serious violation, we remand to the circuit court with instructions to remand to the Commissioner for a re-determination of the penalty consistent with this opinion.

Affirmed in part,<br>reversed in part,<br>and remanded.