COURT OF APPEALS OF VIRGINIA


Present:   Judges Alston, Huff and Senior Judge Coleman
Argued at Salem, Virginia


NATIONAL COLLEGE OF BUSINESS AND
  TECHNOLOGY, INC.
                                                              OPINION BY
v.        Record No. 1641-11-3                       JUDGE GLEN A. HUFF
                                                             APRIL 3, 2012
COURTNEY M. MALVEAUX, COMMISSIONER
  OF LABOR AND INDUSTRY


             FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                        Robert P. Doherty, Jr., Judge

             Samuel M. Brock III (Spilman Thomas & Battle, PLLC, on brief),
             for appellant.

             Joshua N. Lief, Senior Assistant Attorney General (Kenneth T.
             Cuccinelli, II, Attorney General; Steven P. Jack, Assistant
             Attorney General, on brief), for appellee.


        On this second appeal, National College of Business and Technology, Inc. ("the

College") appeals the Circuit Court of the City of Salem's ("circuit court") order, on remand

from this Court's opinion, Nat'l College of Bus. and Tech., Inc. v. Davenport,[1] 57 Va. App. 677,

705 S.E.2d 519 (2011), finding that the asbestos-related violations were properly classified as

"other than serious" violations with no penalties imposed.  On appeal, the College contends that

the circuit court erred in finding that the alleged violations were properly classified as "other

than serious" violations, rather than "de minimis" violations, because the Commissioner failed to

produce credible evidence of a direct and/or immediate relationship to the occupational safety

---

[1] Courtney M. Malveaux was appointed by Governor Robert F. McDonnell to succeed
C. Ray Davenport as Commissioner of Labor and Industry, effective April 10, 2010.  On May 6,
2011, the circuit court granted the motion to substitute Commissioner Malveaux as successor in
interest to C. Ray Davenport pursuant to Rule 3:17.

and health of the College's employees.  For the following reasons, this Court affirms the circuit court's holding.

## I.  BACKGROUND[2]

On appeal, "[w]e view the facts in this case 'in the light most favorable to sustaining the [Commissioner's] action and take due account of the presumption of official regularity, the experience and specialized competence of the [Commissioner], and the purposes of the basic law under which the [Commissioner] has acted.'"  Nat'l College, 57 Va. App. at 680-81, 705 S.E.2d at 521 (alteration in original) (quoting Sentara Norfolk Gen. Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999)).  So viewed, the evidence is as follows.

The Virginia Department of Labor and Industry Occupational Safety and Health Administration ("VOSH") received an anonymous complaint concerning dust from the renovation of the College in Salem.  Doug Wiggins ("Wiggins"), a VOSH asbestos/lead compliance officer, investigated the complaint at the College.  He initiated the inspection on January 20, 2004.  During the inspection, Wiggins was told there had been an asbestos inspection and report prior to the renovation work.

On one side of the gymnasium, Wiggins noticed four-inch diameter holes cut through the concrete floor.  The holes were for an electrical conduit to pass through the floor to the basement.  He was told there was an old boiler room beneath that area.

Wiggins then inspected the boiler room located in the basement, and observed some damaged pipe insulation suspected to contain asbestos, approximately seven to eight feet above the floor.  Wiggins photographed insulation material found on the pipes and ducts in the boiler

---

[2] As the factual background is the same as in the first appeal, it is taken almost verbatim from this Court's previous opinion.  Nat'l College, 57 Va. App. at 681-84, 705 S.E.2d at 521-22.

room.  He found asbestos-containing material in some of the insulation.[3]  In response to questioning if amosite and chrysotile asbestos caused mesothelioma, Wiggins affirmatively responded that both of them will cause mesothelioma.[4]  Wiggins also testified it takes an expert to identify asbestos.  Wiggins indicated most asbestos material is covered by a cloth-like material to "keep the asbestos materials in and to insulate," but several pipes had damaged insulation, revealing the asbestos material.  One photograph showed a pipe with new insulation.

Wiggins observed a valve or faucet-like handle in the boiler room, used to regulate the boiler's temperature.  In response to a question by the circuit court, Wiggins indicated that the presence of the heat valve would cause employees to go to the boiler room.  Wiggins also observed boxes containing College records being stored in the boiler room.

Upon the conclusion of the inspection, Wiggins recommended that the College be cited for certain violations related to the asbestos found in the boiler room.  VOSH, based on the recommendations, issued a citation with three subparts.

Item 1 charged the College with not determining the quantities of the asbestos pipe insulation and other asbestos material in the facility, in violation of 29 C.F.R. 1910.1001(j)(2)(i).

Item 2a charged the College with failure to post signs at the entrance of the boiler room where damaged asbestos materials were located, in violation of 29 C.F.R. 1910.1001(j)(3)(v).

---

[3] Wiggins took five samples of the insulation material, but took no air samples. Laboratory analysis revealed asbestos (amosite and chrysotile).  Amosite is described as brown asbestos.  Chrysotile is described as white asbestos.  Sample ID: A415 tested for both amosite and chrysotile at approximately 10% each; Sample ID: A416 tested for chrysotile fibers at approximately 20%; Sample ID: A417 tested for 10% chrysotile fibers in a piece of insulation; Sample ID: A418 tested for chrysotile fibers at approximately 30%.

[4] "Mesothelioma is a form of cancer which affects mesothelial tissue in the lungs, peritoneum or pericardium.  Asbestosis is a form of lung disease that causes interstitial fibrosis or scarring of the lungs."  Nat'l College, 57 Va. App. at 691 n.18, 705 S.E.2d at 526 n.18 (citing The Sloane-Dorland Annotated Medical-Legal Dictionary 351, 36 (Supp. 1992)).

Item 2b charged the College with failure to place warning labels on the products (pipe insulation, old boiler, etc.) that contained asbestos, in violation of 29 C.F.R. 1910.1001(j)(4)(i).

Wiggins explained the rationale of the Item 1 citation. The College was required to inspect all areas where renovation occurred for presumed asbestos-containing material ("PACM") and asbestos-containing material ("ACM"). Specifically, the College would have been required to inspect the boiler room where the damaged asbestos material was found. Wiggins concluded employees had access to the boiler room because the College records were stored there and because employees must go to the boiler room to adjust the temperature.

Referring to Item 2a of the citation, Wiggins testified the College had a duty to post signs at the entrance to the boiler room to identify the asbestos materials present. There were no such signs. As to item 2b, the College was obligated to affix warning labels to all products containing asbestos fibers (or to their containers). No such labels were present.

Wiggins then addressed the range of penalties associated with the violations. There are three grades of severity: high, medium, and low. There are two grades of probability: greater and lesser. The levels of severity and probability are combined to reach a "gravity-based" penalty.[5] Because asbestos is carcinogenic,[6] meaning it "may cause cancers, may cause mesothelioma, [and] may cause asbestosis," Wiggins classified the severity as "high." He

_____

[5] The Field Operations Manual ("FOM") explains gravity-based penalty ("GBP") as follows: "The GBP for each violation shall be determined based on an appropriate and balanced professional judgment, combining the severity assessment and the final probability assessment." Chapter 11, I.B.8.a. It must be noted that the FOM is an operational manual setting forth procedures to investigate violations. It is not, and does not, purport to establish substantive law.

[6] "A carcinogen is 'a substance or agent producing or inciting cancerous growth.' Webster's New International Dictionary 337 (3d ed. 1993). Carcinogenic means 'producing or tending to produce cancer.'" Nat'l College, 57 Va. App. at 691 n.17, 705 S.E.2d at 526 n.17 (quoting Webster's, supra, at 337).

- 4 -

classified the probability of exposure as "lesser" based on the potential for employees to be in the area and with what frequency.

Wiggins applied the same calculation to arrive at the penalties for Items 2a and 2b, which he grouped together to arrive at a proposed penalty. He calculated the penalties based on the criteria for "serious" violations set forth in the Field Operations Manual ("FOM").

The circuit court affirmed the Commissioner's citations and the penalties imposed. The College appealed to this Court alleging that the circuit court erred in finding "(1) that the College's employees were exposed to the asbestos hazard and (2) that the violations were 'serious,' as defined by Code § 40.1-49.3." Nat'l College, 57 Va. App. at 680, 705 S.E.2d at 521. On February 15, 2011, this Court affirmed the circuit court holding that there was evidence that the employees were exposed to asbestos at the College. Id. at 691, 705 S.E.2d at 526. This Court, however, reversed the circuit court's finding that the evidence in the record was sufficient to show a finding of a serious violation in that there was no evidence that a person exposed to asbestos is likely to suffer serious injury or death. Id. at 691-92, 705 S.E.2d at 526. This Court then remanded the second issue to the circuit court with instructions to remand to the Commissioner "for a re-determination of the penalty consistent with this opinion." Id. at 692, 705 S.E.2d at 526.

Upon remand, the Commissioner filed a memorandum on re-determination of the penalty in the circuit court, and proposed that the citations be classified as "other than serious" violations without penalty, pursuant to Code § 40.1-49.4(G), based on the fact that the violations have a direct relationship to the occupational safety and health of the College's employees. The Commissioner acknowledged in the memorandum that since the diseases resulting from exposure to asbestos do not appear immediately, the question was not whether the relationship was immediate but rather whether the relationship was direct.

- 5 -

The College filed its response contesting the Commissioner's proposed classification of the violations. The College argued that the violations should have been classified as "de minimis" since there was no proof of a direct and/or immediate relationship between the violations and the occupational safety and health of the College's employees.

On June 29, 2011, the circuit court issued a letter opinion finding that "the violations committed by [the College] are classified as 'other than serious' violations. They are not 'de minimis' violations." In the letter opinion, the circuit court "adopt[ed] the 6/10/11 'Memorandum on Re-determination of the Penalty' as filed by the Commissioner . . . , as the opinion of this [c]ourt." On July 21, 2011, the circuit court issued a final order and specifically held that, "the [circuit court] finds that the asbestos related violations, . . . , are properly classified as 'other than serious' violations with no penalties imposed." This appeal followed.

## II. STANDARD OF REVIEW

On appeal, "[t]he burden is upon the party complaining of an agency action to demonstrate an error of law subject to review." Roanoke Mem'l Hosp. v. Kenley, 3 Va. App. 599, 603, 352 S.E.2d 525, 527 (1987) (citation omitted). Further,

> [o]n appeal, findings of fact made by the trial judge are presumed to be correct and are "given the same effect as a jury verdict, settling all conflicts in the evidence in favor of the prevailing party." Richmond v. Beltway Properties, 217 Va. 376, 379, 228 S.E.2d 569, 572 (1976). In reviewing such a factual finding, we view the evidence in a light most favorable to the finding. See, e.g., Rudder v. Housing Authority, 219 Va. 592, 595, 249 S.E.2d 177, 178 (1978), appeal dismissed, 441 U.S. 939 (1979). A contention that the evidence does not support the court's factual finding will be sustained only when the finding is plainly wrong or is without credible evidence to support it.

Floyd S. Pike Electr. Contr., Inc. v. Comm'r, Dep't of Labor & Indus., 222 Va. 317, 322, 281 S.E.2d 804, 807 (1981).

- 6 -

III.  ANALYSIS

On appeal, the College contends that the circuit court erred in finding that the alleged violations were properly classified as "other than serious" violations, rather than "de minimis" violations.  Specifically, the College contends that 1) "[u]nder the FOM, the violations did not have a direct and immediate relationship to the occupational safety and health of [the] College's employees"; and 2) "the Commissioner failed to establish that [the] College's violations had either a direct or immediate impact on the occupational safety or health of its employees."

A.  "Direct and Immediate Relationship"

The College first contends that the circuit court erred and was plainly wrong in classifying the violations as "other than serious" when "[u]nder the FOM, the violations did not have a direct and immediate relationship to the occupational safety and health of [the] College's employees."  The College specifically asserts this on the basis that the Commissioner expressly acknowledged there was no "immediate" harm to the College's employees from exposure to the asbestos, and thus the violations should be classified as "de minimis."

As noted by the College, the FOM provides that an "[o]ther-than-[s]erious [v]iolations" causation has a "direct and immediate relationship to [an employee's] safety and health."  FOM, Chapter 10, II.A.  This Court, however, looks to the FOM only for guidance as the FOM does not establish substantive law.  See Nat'l College, 57 Va. App. at 683 n.6, 705 S.E.2d at 522 n.6 ("It must be noted that the FOM is an operational manual setting forth procedures to investigate violations.  It is not and does not purport to establish substantive law.").

In turning to the substantive law, the Virginia Administrative Code defines an "[o]ther [than serious] violation" as  "a violation which is not, by itself, a serious violation within the meaning of the law but which has a direct *or* immediate relationship to occupational safety or health."  16 VAC 25-60-10 (emphasis added).  Under the Administrative Code, the requirements

are disjunctive requirements rather than conjunctive requirements. Therefore, contrary to the College's assertion in reliance on the FOM, an "other [than serious] violation" can occur if there is either a "direct or immediate relationship" to the employees' safety and health. Id. Thus, the circuit court did not err in applying the law, as the College alleges, to this case.

### B. "De Minimis" or "Other [Than Serious] Violation"

The College also contends that the circuit court erred because "the Commissioner failed to establish that [the] College's violations had either a direct or immediate impact on the occupational safety or health of its employees." Specifically, the College asserts that even though the College failed to inspect the boiler room and post warnings about asbestos, there is no evidence of the level or frequency of exposure to ACM that would have a direct relationship to its employees' safety and health. In other words, the College argues that there is no evidence of causation between the employees' health and safety and the violations.[7]

Under the VOSH plan, VOSH inspects private industry workplaces, and issues a citation to the employer based upon "reasonable cause to believe" that a violation has occurred. Code § 40.1-49.4(A)(1). In addition to a "serious" violation, VOSH also classifies a violation as either "de minimis" or "other [than serious]." See Code § 40.1-49.3; 16 VAC 25-60-10; FOM, Chapter

---

[7] The College also asserts on brief that the Commissioner did not prove the employees were "actually exposed" to the ACM in the boiler room while at the same time noting that "admittedly the Court of Appeals held [in the prior appeal] that 'access' was sufficient for a violation." Appellant's Br. at 10. As noted by the College, this Court already determined in the prior appeal that it was sufficient that the employees had access to the room, and the Commissioner was not required to prove that an employee was actually exposed for a violation to have occurred. Nat'l College, 57 Va. App. at 684-85, 705 S.E.2d at 523-24. Thus, any attempt by the College to relitigate this issue that was raised in the prior appeal is barred by the doctrine of res judicata. Williams v. Commonwealth, 57 Va. App. 750, 770-71, 706 S.E.2d 530, 540 (2011) ("Res judicata 'precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction.'" (quoting Neff v. Commonwealth, 39 Va. App. 13, 18, 569 S.E.2d 72, 75 (2002))).

10, II.A. The Virginia Administrative Code defines "de minimis" as "a violation which has no direct or immediate relationship to safety and health." 16 VAC 25-60-10.

As noted above, an "[o]ther [than serious] violation" is "a violation which is not, by itself, a serious violation[8] within the meaning of the law but which has a direct or immediate relationship to occupational safety or health." 16 VAC 25-60-10. The FOM describes an "[o]ther-than-[s]erious [v]iolation" as follows:

> This type of violation, defined in regulation as "Other Violation" in § 10 of the VOSH Administrative Regulations Manual, shall be cited in situations where the most serious injury or illness that would be likely to result from a hazardous condition cannot reasonably be expected to cause death or serious physical harm to exposed employees but does have a direct and immediate relationship to their safety and health.

FOM, Chapter 10, II.A.

In its memorandum submitted to the circuit court, the Commissioner conceded that the violations in this case have no immediate relationship to the safety and health of the College's employees in that mesothelioma or asbestosis do not "appear immediately upon an exposure but can take many years to manifest themselves." Furthermore, the circuit court adopted the Commissioner's "'Memorandum on Re-determination of the Penalty[,' which included the concession,] . . . as the opinion of [the circuit court]." In addition, although the record contains no evidence of the level of exposure or frequency of exposure that leads to injury or death as

---

[8] A "serious violation" is

> a violation deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

Code § 40.1-49.3.

noted by this Court's previous opinion, this is not the question in the present case. Nat'l College, 57 Va. App. at 691, 705 S.E.2d at 526. Rather, based on the Commissioner's concession and the circuit court's subsequent adoption of that concession, the question in this case is whether the record contains sufficient credible evidence that there is a direct relationship between an employee's exposure to asbestos materials and an employee's health and safety.

The record in this case contains sufficient credible evidence to support the circuit court's holding that employees' exposure to asbestos has a direct relationship to their safety and health – i.e. an "other [than serious] violation." As this Court held in the previous appeal, the College's employees were exposed to the asbestos material in the boiler room. With regard to the asbestos material Wiggins testified that several pipes had damaged insulation that revealed the asbestos material and that he took samples of the insulation material. The laboratory analysis of the samples taken indicated that every sample contained at least ten percent to thirty percent of amosite and/or chrysotile asbestos. In response to questioning regarding whether amosite and chrysotile asbestos caused mesothelioma, Wiggins affirmatively responded that both of them will cause mesothelioma. Wiggins further testified that asbestos is a "carcinogenic" that "may cause cancers, may cause mesothelioma, [and] may cause asbestosis."

Based on the foregoing, the evidence in the record is sufficient to prove that the violations in this case have "a direct . . . relationship to [the College's employees'] occupational safety and health." 16 VAC 25-60-10. Accordingly, the circuit court did not err in holding that the violations in this case are properly classified as "other than serious" violations.

## IV.  CONCLUSION

For the foregoing reasons, we hold that there is substantial evidence in the record to support the finding that the violations were "other than serious violations" – not simply "de minimis violations" – and we affirm the circuit court.

<u>Affirmed.</u>