COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Callins
Argued at Arlington, Virginia


TAHIRA YASMEEN

MEMORANDUM OPINION[*] BY
v.        Record No. 2245-23-4          JUDGE CLIFFORD L. ATHEY, JR.
MARCH 18, 2025

SAJJAD HAIDER


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

Stephanie Duran (Safi, Duran & Chim, PLLC, on brief), for
appellant.

Khalid Mahmood (Law office of Khalid Mahmood P.C., on brief),
for appellee.


Tahira Yasmeen ("wife") and Sajjad Haider ("husband") were granted a divorce in the

Circuit Court of Fairfax County ("circuit court") on November 29, 2023.  In the final divorce

decree, the circuit court divided their marital assets and awarded wife both spousal support in the

amount of $500 per month as well as $8,500 in attorney fees.  On appeal, wife assigns error to

both the equitable distribution determination as well as the spousal support award.  Husband

assigns cross-error to the $500 per month spousal support award for an indefinite period and to

the award of attorney fees.  For the following reasons, we affirm the judgment of the circuit

court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. BACKGROUND

Following 16 years of marriage, husband and wife separated in June of 2022. They subsequently filed for divorce in the circuit court, requesting that the court equitably distribute their marital estate. Wife also requested a permanent award of spousal support. Husband alleged that the basis for his decision to separate from his wife was a false police report filed by her claiming that he had assaulted her. Conversely, wife alleged that she separated from her husband and was seeking a divorce based upon cruelty.

At trial, husband testified that during most of the marriage he had worked as a truck driver and earned approximately $1,500 per week during 2021 and 2022. Husband further testified that his income was used to pay for "expensive items," including paying rent for the parties' marital residence. He also testified that he had ceased working as a contract truck driver following their separation because he felt that continually driving during the day and night had adversely affected his health.[1] Husband further testified that he currently earned $2,900 monthly working only as a daytime truck driver and had monthly expenses totaling $3,034, including a $450 monthly credit card payment.

Husband's personal bank statements, which were entered in evidence, reflected that approximately $90,000 in deposits were received in his bank account in 2020, $42,000 in 2021, $98,000 in 2022, and $25,000 as of June 2023. Acknowledging that his bank deposits exceeded his claimed income, husband testified that a portion of the deposited money actually belonged to a coworker. Husband also admitted that he failed to disclose in his discovery responses a bank account he possessed in Pakistan containing about $345.

---

[1] Husband testified that he developed "two heart problems" in 2022 and had "stomach problems."

Husband's personal bank statements further reflected that $96,597.98 had been withdrawn or transferred from his bank accounts since January of 2020. Husband explained this discrepancy by testifying that when the parties separated in 2020, he began sending money eventually totaling $50,480 to his family in Pakistan. Husband also asserted that about $15,000 of the funds sent to his family in Pakistan had been used to fund the construction of a house in Pakistan, which he jointly owned with his siblings. In addition, husband acknowledged that he and his siblings had jointly inherited another house in Pakistan but did not testify as to its value.

As husband began to describe his nonmonetary contributions to the marriage, wife objected because husband had not disclosed any nonmonetary contributions during discovery. Although the circuit court agreed that wife's discovery requests required husband to disclose any claim "that certain things happened [during] the marriage," the court overruled her objection and gave husband "a little bit of leeway" to testify concerning his claimed nonmonetary contributions to the marriage. The circuit court also limited husband's ability to "testify at length about things that were never disclosed." Later, during the trial, husband testified without objection that he and wife cleaned and made meals together during their marriage.

Wife then testified that husband physically and verbally abused her because he wanted a new wife and she refused to divorce him. Wife also testified that she gave her husband $7,000 in 2019 to purchase a house in Pakistan but had not personally seen the house. Wife further testified that she had stopped working in 2020 due to her health and currently received monthly social security payments of $735.[2] She also testified that she had deposited an additional $17,000 between January 2022 and January 2023 in her bank account but could not explain the origin of some of the deposits. She was able to attribute approximately $3,000 of the $17,000 in

---

[2] Wife testified that she was 60 years old, had various medical conditions, and was recovering from cancer.

deposits to funds she had received from husband. Wife testified that her monthly expenses totaled $2,825 and that her family had been giving her money to cover her expenses. On cross-examination, she conceded that she had not disclosed the funds in response to husband's discovery requests.

After considering the evidence and closing arguments, the circuit court granted husband's petition for divorce on the grounds that they had lived separate and apart for more than one year. The circuit court further ruled that wife had failed to prove husband's alleged cruelty and that their marriage had "likely dissolved based on [their] failure to meet and manage [each other's] needs and expectations."

In determining the equitable distribution of the marital assets, the circuit court observed that it had "received limited credible evidence as to the marital assets." As a result, the circuit court determined that it was "unable to distribute or award any sums relating to" husband's real property in Pakistan because wife failed to introduce any evidence regarding its current value, location, condition, or status. The circuit court did award each party one of the two marital vehicles and further ordered that both parties were to retain their individual bank accounts.

Concerning spousal support, the circuit court found that the parties' testimony regarding their finances was "questionable and lacking in credibility." Hence, the circuit court ruled that husband's income was "not limited to his wages" and that he received "at least" $3,400 monthly. The court also found that wife had not explained the source of approximately $14,000 of the $17,000 deposited into her PNC bank account notwithstanding her testimony "that she receive[d] monetary gifts from her family to supplement her income." The circuit court ultimately determined that wife had received $1,900 in monthly income. The court additionally found that neither party "offered credible evidence that income should be imputed . . . or that there were issues of under-employment" and that husband "testified that the [p]arties would share in the

- 4 -

household responsibilities." Based on its findings as to monthly income, the circuit court ordered husband to pay wife $500 monthly in spousal support and further awarded wife $8,500 for attorney fees. This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting [that party] the benefit of any reasonable inferences." *Shah v. Shah*, 70 Va. App. 588, 591 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). We thus view the evidence in the light most favorable to husband when considering wife's assignments of error and vice versa when considering husband's assignments of cross-error. "The trial court's rulings come to us with a presumption of correctness." *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022). "The trial court's decision on factual issues is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." *Brandon v. Coffey*, 77 Va. App. 628, 635 (2023) (quoting *Rainey*, 74 Va. App. at 377).

### B. *Wife waived her objection to husband's testimony regarding non-monetary contributions.*

Wife contends that the circuit court erred by giving husband "leeway" to testify regarding information that was not disclosed in discovery.[3] We find her argument waived.

---

[3] Although wife at oral argument before this Court stated her objection in the circuit court was "continuing," the record does not reflect this. *See* Charles E. Friend, *The Law of Evidence in Virginia* § 2-5(a) (2024) (stating that a continuing objection is noted "by asking that the record reflect that counsel stands firm in objecting to the evidence in question despite the fact that the initial objection or objections have been overruled"); *Rodriguez v. Commonwealth*, 18 Va. App. 277, 286 (1994) (en banc) ("[W]here evidence is introduced that departs from that avowed to the trial court and upon which the trial court ruled, the responsibility to contemporaneously object rests with counsel, not the trial judge.").

"A party cannot avail itself of an objection to evidence if the party has, at some other time during the trial, 'voluntarily elicited the same evidence, or has permitted it to be brought out by [her] adversary without objection.'" *Nat'l Coll. of Bus. & Tech., Inc. v. Davenport*, 57 Va. App. 677, 690 n.16 (2011) (quoting *Burns v. Bd. of Supervisors of Stafford Cnty.*, 227 Va. 354, 363 (1984)). Although wife objected when husband initially testified regarding his nonmonetary contributions to the marriage, she did not object when he later testified that they cleaned and made meals together during their marriage. *See id.* (finding that where "the circuit court sustained an objection to similar testimony," and the party contesting the evidence "did not make a continuing objection, nor did it renew its objection to [the] later testimony," the objection on appeal was considered waived). Thus, we hold that wife waived her objection to the circuit court's ruling by failing to object to husband's subsequent testimony.

C. *The circuit court did not err in its equitable distribution of marital assets.*

Wife asserts that the circuit court erred in denying her a monetary award: 1) because wife did not identify the "location, value, condition, or status of the real property allegedly owned by husband in Pakistan"; and 2) because of "[h]usband's waste and/or negative monetary and non-monetary contributions."

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021). Accordingly, the Court will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). We have explained that "requesting this Court to simply substitute our judgment of the

evidence for that of the trial court is an inappropriate and singularly ineffective appellate argument." *Fadness v. Fadness*, 52 Va. App. 833, 842 (2008). "The General Assembly has given circuit courts the discretion to determine the equitable distribution of marital assets" and "[i]t is not up to us, sitting as an appellate court, to reweigh evidence against the statutory factors." *Id.* "If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." *Id.* The party who requests equitable distribution has the burden of proof on issues relating to the classification and valuation of the property. *See Anthony*, 63 Va. App. at 88. A court may award equitable distribution "without giving consideration to the . . . valuation of every item of property, where the parties have been given a reasonable opportunity to provide the necessary evidence to prove . . . valuation" but have not done so. *Torian v. Torian*, 38 Va. App. 167, 177 (2002) (alterations in original) (quoting *Bowers v. Bowers*, 4 Va. App. 610, 618 (1987)).

Wife has not shown that the circuit court erred in making the equitable distribution. Here, the circuit court based the equitable distribution award on "the evidence received and [its] consideration of the statutory factors identified in Virginia Code § 20-107.3(E)." Wife also fails to argue that the circuit court's other express findings concerning equitable distribution were unsupported by the evidence. Instead, wife contends that the circuit court should have ignored her failure to prove sufficient details about the property in Pakistan because husband did not properly disclose details about the property in discovery. However, wife failed to make any motions to remedy this purportedly incomplete response to discovery and does not assign error to any failure to do so on appeal. *See Torian*, 38 Va. App. at 177. Accordingly, there was insufficient information on which the circuit court could equitably distribute the real property, and thus, it was not an abuse of discretion for the circuit court to find that wife had not met her burden in this regard.

As to wife's assignment of error concerning husband's alleged non-monetary and negative monetary contributions, wife simply asserts that "the trial court did not indicate that it had considered the [h]usband's negative monetary and non-monetary contributions" and that the court "should have . . . considered" evidence of husband's "verbal and physical abuse on the couple's marriage and her health." However, the record before us demonstrates that such evidence was considered. In its letter opinion, the circuit court stated that it "did not receive any additional credible evidence of marital property or debt other than the evidence identified above" and that its award "was based upon the evidence received" at trial. Moreover, the circuit court specifically found that it "did not receive sufficient evidence to conclude that any such 'cruelty' existed" in the marriage. The record reflects that the circuit court carefully weighed all the evidence presented by the parties, evaluated the credibility of that evidence, and made its award in accordance with the applicable statutory factors. Accordingly, the circuit court did not abuse its discretion in awarding equitable distribution in this case.

D. *The circuit court did not err in awarding spousal support.*

Both parties argue that the circuit court erred in determining spousal support. "Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." *Nielsen v. Nielsen*, 73 Va. App. 370, 390 (2021) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019). "Whether and how much spousal support will be awarded is a matter of discretion for the trial court." *Nielsen*, 73 Va. App. at 390. As a result, a spousal support award "will not be disturbed except for a clear abuse of discretion." *Id.*

As part of determining "the other spouse's ability to pay" portion of spousal support, wife specifically contends that the circuit court erred in determining that her financial resources were

approximately $1,900 a month, because the circuit court characterized monetary contributions from wife's family members as "loans" rather than "gifts."

Here, the circuit court found the testimony from husband and wife "as to their financial resources to be questionable and lacking in credibility in certain respects." Wife testified that she received monthly social security payments of $735. She also testified on direct examination in response to a leading question that the money her relatives "give" to her was a "loan." Wife later stated on cross-examination that "relatives give me the money for rent" but said that it was "not a gift" because a "gift could be a month [or two], but this is year or over a year now."[4] The circuit court was therefore clearly within its discretion to weigh wife's testimony about whether the money she received was a gift or a loan, determine the credibility of her testimony, and conclude how to characterize the funds. *See Anderson v. Anderson*, 29 Va. App. 673, 686 (1999) ("It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony."). Wife never testified about the terms of the loan, when she intended to pay it back, how many "loans" she received, information about to whom she owed the funds, or any other pertinent information about details relating to the alleged loan. Likewise, no documentation confirming the existence of a loan was introduced into evidence. There also was no development of wife's testimony categorizing whether funds she received from her family were gifts or loans based on the frequency, duration, or some other time-specific factor in the distribution of the funds. In its letter opinion, the circuit court noted additional unresolved questions in wife's testimony, including a pension wife had in Pakistan of $110 a month that was to begin at an

---

[4] When asked about these statements at oral argument, wife's counsel indicated that issues with translation may have been to blame for the apparent contradiction in terms but did not elaborate any further as to the specific word or words in controversy. But wife has not challenged the accuracy of the transcript, moved to amend it, nor assigned error to the role that translators played in the trial. Accordingly, we consider the transcript as it appears before us.

unspecified future date and wife's testimony that she had a bank account in Pakistan but "incredibly . . . was unable to provide an estimate as to the amount of money held in that account." Accordingly, as the circuit court did not find wife's testimony credible as to whether she was receiving gifts or loans, the circuit court did not abuse its discretion in determining wife's income.

Wife also asserts that the circuit court erred by failing to impute additional income to husband based on his prior employment and deposits to his accounts and that testimony as to his health was "insufficient and unpersuasive." "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." *Collins v. Leeds*, 69 Va. App. 1, 9 (2018).

Here, the record indicates that the circuit court found that husband "has heart problems and stomach problems" and that he was hospitalized for "heart issues" in 2022. Also, the circuit court stated that husband *and* wife "both now assert that they are no longer able to maintain those higher income jobs due to health-related issues" and that neither husband nor wife "offered credible evidence that income should be imputed to the opposing party or that there were issues of under-employment." These credibility determinations are matters firmly within the discretion of the circuit court, as the court has the "opportunity to observe the witnesses' testimony and demeanor." *Lopez v. Commonwealth*, 73 Va. App. 70, 82 (2021). Additionally, as discussed elsewhere, the court appeared to tacitly impute an additional $500 a month to husband, not crediting his testimony that the deposits were for a friend. Consequently, under the appropriate deferential level of appellate review, we cannot say that the circuit court's refusal to expressly impute additional income to husband was plainly wrong or unsupported by the evidence. *Id.*

Wife further argues that the circuit court erred in "determining the amount of spousal support, the resources and needs of the parties, and the relevance of decisions made during the

marriage concerning employment." Wife assigns error because the circuit court "did not make a specific finding as to [husband's] net available income each month" and it improperly considered husband's monthly credit card payments because husband "did not ask the court to consider this debt in fashioning a spousal support award." Wife also emphasizes her own monthly expenses and that husband had historically supported her.

The record here does not support wife's arguments once again. Husband testified that he had a credit card balance of about $8,500. Wife does not present any authority for the proposition that husband was required to affirmatively request that the circuit court consider the credit card balance as evidence. Furthermore, the circuit court expressly considered the pertinent statutory factors in calculating spousal support, including "[t]he obligations, needs and financial resources of the parties." Code § 20-107.1(E)(1). The court was not required to award any spousal support but elected to do so here. Notwithstanding, wife makes mention of a "modest" living arrangement where she was supported by husband but does not allege what this arrangement equated to monetarily and does not even argue that the amount should be increased. When left with these undeveloped arguments juxtaposed against the circuit court's clear consideration of the relevant factors, we find no error in the circuit court's spousal support award.

On cross-appeal, husband contends that the circuit court erred by ordering him to "pay indefinite monthly spousal support of $500" because wife did not prove his current income. Husband testified at trial that his current earnings were $2,900 monthly as a daytime truck driver. The circuit court reached its conclusion regarding the additional income "[b]ased upon [husband]'s income from 2022, what appears to be inaccurate information on his 2022 tax returns, and the deposits into his account in 2023." Husband's bank records include multiple deposits to a checking account, between $300 and $700 a month during 2023. The circuit court was not bound by husband's explanation that some of the money he received belonged to a

coworker. *See Brown v. Commonwealth*, 75 Va. App. 388, 413 (2022) ("[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." (alteration in original)). Accordingly, the circuit court did not clearly abuse its discretion by finding that husband earned "at least" $3,400 monthly and ordering spousal support of $500 as a result.

E. *The circuit court did not abuse its discretion in awarding wife attorney fees.*

Husband further contends on cross-appeal that the circuit court erred by awarding wife $8,500 in attorney fees. In support, husband argues that wife's attorney fees should not have been awarded because wife did not appear in a separate but unrelated protective order case, that wife requested to continue the present matter twice, and that husband "prevailed on most issues." He also requests appellate attorney fees.

A circuit court's decision to award attorney fees is reviewed "under the deferential abuse of discretion standard." *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022). Whether to award appellate attorney fees is governed by Rule 5A:30, which states: "In determining whether to make such an award, this Court is not limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but may consider all the equities of the case." Rule 5A:30(b)(2)(C). "Thus, unlike our review of attorney fee awards made by trial courts, the question of attorney fees on appeal is committed to our discretion based upon our consideration of all of the pertinent facts and circumstances." *Sobol*, 74 Va. App. at 290.

Assuming without deciding that husband's argument is preserved for appellate review, we find that the circuit court did not abuse its discretion in awarding wife attorney fees. Here, the circuit court stated in its letter opinion that it would "entertain oral argument" as to the issue of attorney fees "at a mutually agreeable time." However, husband has not provided this Court with a transcript of any hearing where attorney fees may have been discussed. Rule 5A:8(b)(4)(ii).

- 12 -

There is otherwise insufficient evidence in the record to say that the circuit court erred in awarding wife attorney fees, as there is no indication that the circuit court failed to consider all relevant evidence and equities before making its award of $8,500. Since it is husband's burden to identify error in the record and he has not done so, we are prevented from finding that the circuit court abused its discretion in awarding attorney fees to wife. With respect to appellate attorney fees, we exercise our discretion and decline to award husband appellate attorney fees. Rule 5A:30.

### III. CONCLUSION

For the foregoing reasons, we find that the circuit court did not abuse its discretion in its award of spousal support, in equitably distributing the marital property, or in awarding attorney fees to wife. Accordingly, we affirm the judgment of the circuit court.

*Affirmed.*